**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **22-cr-215 (BAH)** [redacted] |
| **DONNELL TAYLOR** | : | |

## DEFENDANT'S SENTENCING MEMORANDUM

Donnell Taylor is a 30-year-old man who is under the care and supervision of the District of Columbia Department on Disability Services (DDS), living in a residential care facility with the full-time services of aides who are with him 24-hours a day, every day. Mr. Taylor has been in total compliance with the conditions of pretrial supervision since his release more than two years and eight months ago. He has accepted responsibility for his actions and will appear before this Honorable Court for sentencing on one count of possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B). The parties are jointly requesting that the Court impose a sentence of time served followed by 15 years of supervised release with the specific conditions discussed below. This unusual joint request is supported by the extraordinary circumstances of this case, including Mr. Taylor's intellectual disability and the supervision he will continue to receive through DDS.

## Procedural and Factual Background

Mr. Taylor grew up in Washington, D.C, where he lived with his adoptive parents. Beginning at a young age, he received special education services and services from DDS based on his intellectual disability. He has a history of neurodevelopmental problems, and his intellectual quotient (IQ) scores have consistently measured significantly below average. *See*

Exhibit 1 (Sealed) (Letter from Sara Boyd, Ph.D., ABPP). [redacted]. *Id.* at 7.

Mr. Taylor's background is described more fully in the report prepared by Dr. Boyd. [redacted]. After returning home from the Devereux school, Mr. Taylor continued his education at the High Road Academy, a specialized school. With assistance, he graduated in 2013. Since that time, he has worked several jobs, including stocking shelves and cleaning carts at Safeway, cleaning at MGM Casino, and driving for Uber Eats. Prior to his arrest in this case, he has not been arrested for or charged with any criminal offense.

The offense conduct occurred over Instagram. In 2019, he began communicating with a thirteen-year-old boy, after meeting the boy through an online video game. Although Mr. Taylor was more than ten years older than the boy at the time, Mr. Taylor's intellectual and emotional maturity was similar to that of a young boy. Mr. Taylor had very limited sexual knowledge—below average even for a man with an intellectual disability. *See* Exhibit 2 at 1 (Letter from Erica R. Thomas, MS); Exhibit 1 at 7. The offense of conviction occurred when Mr. Taylor asked for and the boy sent explicit photos.

On December 21, 2021, Mr. Taylor was arrested and charged with one count of sexual exploitation of a minor, in violation of 18 U.S.C. §§ 2251(a) and (e). On the government's motion, the court ordered him held without bond. Mr. Taylor was held at the District of Columbia Central Detention Facility (D.C. Jail) for seventeen days. While that may seem like a

relatively short period of time, for Mr. Taylor, who does not have the intellectual or emotional capacity to cope with the conditions at the D.C. Jail, every day was nothing short of a nightmare that led him to suicidal thoughts. He was confused and terrified. This period of incarceration was traumatic and impactful. The impact of that period of incarceration on Mr. Taylor's respect for the law is evidenced by Mr. Taylor's perfect compliance with conditions of pretrial release.

On January 6, 2024, the Honorable Zia M. Faruqui ordered Mr. Taylor released to home confinement with very strict conditions, including the one-to-one caregiver services that DDS continues to provide. DDS contracted with Abundant Life Residential Services to provide housing and services for Mr. Taylor. Initially, Abundant Life placed Mr. Taylor in an apartment with another adult male who has several disabilities and behavior problems. This roommate had two fulltime caregivers. With Mr. Taylor's fulltime caregiver, the small apartment was crowded and stressful due to the roommate's aggressive behavior. Mr. Taylor, nonetheless, strictly complied with the conditions of release. In July 2023, Abundant Life moved Mr. Taylor to a home that he shares with two other adult men with disabilities. Mr. Taylor continues to have full-time, around the clock caregivers, and this is a safe, stable, and secure environment. Pursuant to the court's order, every week since Mr. Taylor's arrest, Abundant Life has sent an email to the Pretrial Services officer, government counsel, and undersigned counsel regarding the status of Mr. Taylor's compliance. Every email has stated that Mr. Taylor "is in full compliance with the conditions of release."

Mr. Taylor's DDS care team recognized that the conduct that led to the charges in this case demonstrated that Mr. Taylor lacked sexuality education, which is not uncommon for individuals with intellectual disabilities. *See* Exhibit 1 at 8-9 & n.6. DDS arranged for Ms. Thomas to provide this education for Mr. Taylor. Since September 2023, Mr. Taylor has

been meeting with Ms. Thomas. As she reports, although his disability makes focusing and staying on task challenging, he has been open to learning and participates fully. *See* Exhibit 2 at 3-4.

In October 2022, after working with Mr. Taylor for several months and due to concerns regarding Mr. Taylor's comprehension and ability to assist in his defense, undersigned counsel retained Dr. Boyd to conduct a competency evaluation. Dr. Boyd concluded that Mr. Taylor was not competent to stand trial. Counsel provided Dr. Boyd's findings to government counsel, who requested an independent evaluation conducted by a court-appointed expert. The Court then ordered an evaluation by the District of Columbia Department of Behavior Health. ECF 30. Pursuant to that order, Dr. Theresa Grant evaluated Mr. Taylor and, like Dr. Boyd, found him not competent to stand trial.

Following Dr. Grant's evaluation, defense counsel retained Lea Ann Preston Baecht, Ph.D., a psychologist who previously worked for more than twenty years as a Forensic Unit Psychologist for the federal Bureau of Prisons, conducting competency evaluations and providing restoration treatment. Dr. Preston Baecht worked with Mr. Taylor over the course of approximately six months, mimicking the restoration services provided by BOP. After many sessions with Mr. Taylor, Dr. Preston Baecht determined that with some additional assistance immediately prior to court proceedings, Mr. Taylor could attain the capacity to permit the proceedings to go forward for a change of plea hearing, although Mr. Taylor likely could not attain the capacity to stand trial due to the nature of a trial and Mr. Taylor's memory and comprehension deficits. Considering these findings, while not taking a position as to Mr. Taylor's competency (or potential competency) to stand trial, the government offered to dismiss the charges against Mr. Taylor and recommend a sentence of time served followed by a

15-year term of supervised release, if Mr. Taylor entered a plea of guilty to one count of possession of child pornography. ECF 43. Mr. Taylor—particularly after working with Dr. Preston Baecht and Ms. Thomas—fully recognized that his conduct was wrong, accepted responsibility, and entered a guilty plea on May 9, 2024.

## Argument

When imposing a sentence, the Court must consider the United States Sentencing Guidelines ("Guidelines" or "U.S.S.G."), the nature and circumstances of the offense, the history and characteristics of the defendant, the need for the sentence to serve the purposes of sentencing, the kinds of sentences available, the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, and the need to provide restitution to any victims of the offense. *See* 18 U.S.C. § 3553(a). In addition, the sentencing court may consider any "information concerning the background, character, and conduct" of the defendant, including age, educational and vocational skills, and mental and emotional conditions. *See* 18 U.S.C. § 3661. Congress has further provided that when determining the length of any prison term, courts should "recogniz[e] that imprisonment is not an appropriate means of promoting correction and rehabilitation." 18 U.S.C. § 3582. With that limitation and considering all of the purposes of sentencing, the Court must impose a sentence that is "sufficient, but not greater than necessary, to comply with the purposes [of sentencing]." 18 U.S.C. § 3553(a).

### I. The United States Sentencing Guidelines.

As set forth in the PSR, the recommended sentencing range under the Guidelines is the statutory maximum term of incarceration, 120 months. PSR ¶ 88. As the District of Columbia Circuit has emphasized, however, "the Guidelines are truly *advisory*." *United States v.*

*Gardinelli*, 545 F.3d 1089, 1096 (emphasis in original); *see also Gall v. United States*, 552 U.S. 38, 50 (2007) (court "may not presume that the Guidelines range is reasonable"). This case involves extraordinary circumstances—including Mr. Taylor's intellectual disability and the services and supervision he is receiving through DDS—which demonstrate that the advice of the Guidelines should be rejected in this case. As the government agrees, the circumstances of this case support the requested extraordinary variance to time served followed by a 15-year term of incarceration with the strict conditions discussed below.

**II. The Nature and Circumstances of the Offense.**

There is no doubt that child pornography offenses are very serious offenses that cause significant harm to children. Mr. Taylor's conduct, however, must be viewed in the context of his intellectual disability and lack of appropriate understanding and education. While these factors do not fully excuse his conduct, they do mitigate his culpability and inform the means by which any additional harm can be prevented. Mr. Taylor's constant supervision by DDS caregivers ensures he will not be a danger to anyone while on supervised release, and the education he is receiving will ensure that he fully understands what is and is not lawful sexual activity, mitigating any risk of recidivism.

**III. History and Characteristics of Mr. Taylor.**

Although Mr. Taylor was 25 years old at the time the offense conduct began, his intellectual age is significantly below that. For the same reasons that Courts find youthful offenders are less culpable, Mr. Taylor's intellectual disability supports a substantial variance. *Cf. Miller v. Alabama*, 567 U.S. 460, 471 (2012) (developments in psychology and brain science showing that juveniles (1) "have a lack of maturity and underdeveloped sense of responsibility, leading to recklessness, impulsivity, and heedless risk-taking"; (2) "are more vulnerable to

negative influences and outside pressures, including from their family and peers"; and (3) possess character traits that are "less fixed" than those of an adult); *Roper v. Simmons*, 543 U.S. 551, 569–70 (2005) (juveniles "have diminished culpability and greater prospects for reform.").

Mr. Taylor's intellectual disability helps to explain how he became involved in the offense conduct. He should not be sentenced in the same way that a 30-year-old man who does not have an intellectual disability would be sentence for a similar offense. Mr. Taylor did not have the same intellectual capacity or understanding of appropriate and inappropriate sexual conduct, as an offender without a similar disability. Mr. Taylor was the victim of sexual abuse at a young age. Mr. Taylor is now receiving sexuality education services and learning to process his own trauma.

The extraordinary circumstances of the supervision provided by DDS supports the requested sentence of time serve. Mr. Taylor has a caregiver with him at all times. These caregivers are assigned to help him manage everyday tasks, but also ensure that there is no opportunity to reoffend.

**IV. Purposes of Sentencing.**

The Court must impose a sentence that reflects the seriousness of the offense, promotes respect for the law, provides just punishment for the offense, affords adequate deterrence, and protects the public. Under the circumstances of this case, because Mr. Taylor is supervised around the clock by DDS, a prison term is not necessary to serve these purposes. Moreover, his disability would make him an easy target for abuse if sentenced to a term of incarceration. *See United States v. Knott*, 638 F. Supp. 3d 1310 (M.D. Ala. 2022) (defendant with Autism Spectrum Disorder "extraordinarily vulnerable to abuse in prison" and sentenced to term of supervision for possession of child pornography).*United States v. Keskin*, No. 6:17-cr-77-DCI, ECF No. 95

(M.D. Fla. Feb. 7, 2018) (imposing sentence of time served (one day) with 15 years of supervised release for possession of child pornography noting that defendant with Autism Spectrum Disorder would be "particularly vulnerable" and "easy target for physical and sexual abuse" in prison).

Mr. Taylor spent seventeen terrifying days at the D.C. Jail before his release in this matter. As this Court knows, the conditions within the District of Columbia Department of Corrections are ordinarily harsh. *See United States v. Carter*, 18-cr-180 (RMC), 2018 WL 6700568 at n.2 (Dec. 20, 2018) ("incarceration at the D.C. Jail is qualitatively more severe than [Bureau of Prisons] custody."). For Mr. Taylor, this experience was terrifying and serves as a substantial deterrent. He now knows that he must strictly follow the law to ensure that he never returns there. His compliance on pretrial release demonstrates that he has learned this. Despite his disability, he is capable of following court orders and complying with conditions of release.

Mr. Taylor also must register as a sex offender, with the publication of the information about this case to the community and his friends and neighbors. His sexual offender designation will effectively make him a societal outcast for the next 15 years. *See, e.g.*, May 21, 2013 *New York Times* Op-ed, "Sex Offender Village"; October 1, 2013, *New York Times*, "Restricted Group Speaks Up, Saying Sex Crime Measures Go Too Far." Finding employment with an intellectual disability is difficult, but finding employment with an intellectual disability as a registered sex offender will be extremely difficult. As several courts have recognized, the collateral consequences of conviction, such as registration as a sex offender, are relevant to the "need" for the sentence imposed to reflect just punishment. *See, e.g., United States v. Garate*, 543 F.3d 1026, 1028 (8th Cir. 2008) (on remand from the Supreme Court for reconsideration in light of *Gall*, overruling prior holding that it was inappropriate for the district court to consider

the lasting effects of being required to register as a sex offender); *United States v. Pauley*, 511 F.3d 468, 474-75 (4th Cir. 2007) (in a case involving a conviction for possession of child pornography after *Gall*, affirming the district court's finding that the defendant "warranted a lower sentence because he lost his teaching certificate and his state pension as a result of his conduct," because "[c]onsideration of these facts is consistent with § 3553(a)'s directive that the sentence reflect the need for just punishment," *id.* § 3553(a)(2)(A), and "adequate deterrence," *id.* § 3553(a)(2)(B)); *United States v. Gardellini*, 545 F.3d 1089 (D.C. Cir. 2008) (affirming below-guideline sentence based in part on court's findings that defendant suffered substantial mental and personal stress as a result of prosecution).

**V. The Need to Avoid Unwarranted Disparities.**

The Court must consider the "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). Whether any difference among sentences is warranted or unwarranted depends on the individual circumstances of each case and their relationship to the purposes of sentencing. "Unwarranted disparity is defined as different treatment of *individual* offenders who are similar in relevant ways, or similar treatment of *individual* offenders who differ in characteristics that are relevant to the purposes of sentencing." U.S. Sent'g Comm'n, *Fifteen Years of Guidelines Sentencing: An Assessment of How Well the Federal Criminal Justice System Is Achieving the Goals of Sentencing Reform* 113 (2004).

In this case, a substantial variance to time served is necessary to avoid unwarranted disparities between Mr. Taylor and other defendants with cognitive and emotional disabilities who were charged with child pornography offenses. Other courts have recognized that defendants with such disabilities may be less culpable and have imposed sentences of time

served or probation for similar offenses. *See, e.g., Knott*, 638 F. Supp. 3d 1310 (defendant with Autism Spectrum Disorder sentenced to seven years of supervised release with 27 months of home detention for possession of child pornography); *United States v. Meillier*, 650 F. Supp. 2d 887 (D. Minn. 2009) (sentencing intellectually disabled man to one day incarceration and 30-year term of supervised release for receipt of child pornography, noting "he is, intellectually speaking, an eleven-and-a-half-year-old boy. No court would sentence an eleven-and-a-half-year-old boy to a lengthy term in a federal penitentiary for downloading images of other children engaged in sexual activity"); *United States v. Huseth*, No. 18-20027-JAR, 2021 WL 4940915 (D. Kan. Oct. 22, 2021) (defendant with Autism Spectrum Disorder and associated severe cognitive deficits sentenced to probation); *Keskin*, No. 6:17-cr-77-DCI, ECF No. 95 (M.D. Fla. Feb. 7, 2018) (defendant whose "delayed diagnosed mental infirmity of Autism Spectrum Disorder and Obsessive Compulsive Disorder is pronounced, well documented and unrebutted by the Government," sentenced to time served); *United States v. Mallatt*, No. 4:13-cr-3005, 2013 WL 6196946 (D. Neb. Nov. 27, 2013) (defendant "profoundly disabled" by "a neurological condition that is on the Autism spectrum" sentenced to time served); *United States v. Burgess*, 6:22-cr-06016-EAW (W.D.N.Y. 2023) (one day time served sentence and ten years supervised release for defendant with history of cognitive and physical disabilities); *United States v. Hawkins,* 4:18-CR-6007 (E.D. Wa. 2020) (15 year term of supervised release for man with Asperger's Syndrome, subject to bullying, who evidenced no difficulties during extended period of pretrial release); *United States v. Carlsson*, 15-CR-200-B (M.D. Fla. 2016) (time served with ten years' supervised release for client with Asperger's Syndrome). These are just some of the many examples of similar cases with similar sentences that did not include incarceration for child pornography offenses.

**V. Available Alternative to Incarceration.**

Section 3553(a)(3) requires the Court to consider "the kinds of sentences available." Here, the available conditions of supervise release as an alternative to incarceration are sufficient to serve the purposes of sentencing and in this unusual case provide more long-term security than a term of incarceration. Since his release, DDS has worked to ensure that Mr. Taylor both has the care and services he needs and complies with the conditions of supervision. The strict conditions of release have proved effective and Mr. Taylor has been in full compliance for more than two years and eight months.

Recognizing the significant restrictions that DDS can monitor and the security these restrictions provide, the government has agreed to a joint recommendation that the Court impose a sentence of time served followed by 15 years of supervised release. The parties jointly recommend the following conditions of supervision:

- Home incarceration with GPS monitoring at a DDS self-secure supported living facility, with the exception that the defendant may leave the facility under the supervision of his one-to-one direct support provider to participate in DDS activities, to visit his mother at her residence, to attend medical or therapeutic appointments, or for other purposes approved by the U.S. Probation Office;

- That defendant must comply with DDS's Behavior Support Program, including one-to-one direct support 24 hours a day/7 days a week;

- The defendant must not come into contact with anyone under the age of 18 years, where contact is defined as verbal, written, or physical interaction;

- The defendant must not possess or have access to any smartphone, computer, smartwatch, or other device with internet capabilities, unless the internet capabilities have been disabled by the DDS caregiver, or have access to any social media applications;

- The defendant must participate in mental health and sexual education treatment, including medication compliance; and

- The defendant must comply with his Individual Support Plan (ISP) and DDS

habilitation services and support.

As part of the plea agreement, the parties also agree that Mr. Taylor may seek to modify the condition of GPS monitoring only after one year of the commencement of the term of supervised release, and Mr. Taylor may seek to modify any other condition only after three years.

These conditions not only are sufficiently severe to serve the purposes of sentencing, but also are more secure in the long term than a sentence of incarceration. DDS provides services to Mr. Taylor through a process that led to a finding that he was in need of services. If the Court incarcerates Mr. Taylor and he is outside of the District of Columbia for more than 30 days, DDS will automatically begin the discharge process to close his case. Following release from a term of incarceration, he would need to reapply to obtain services. While he presumably would still qualify for services, the process of reestablishing services could take months and reestablishing the same level of services would not be guaranteed.

The sentencing recommendation from the Probation Office does not appear to adequately consider Mr. Taylor's disability or the DDS services in place. The Probation Office agrees that a substantial downward variance from the sentence recommended under the Guidelines is warranted, but recommends a 60-month term of incarceration. ECF 51. The Probation Office, however, makes no reference to many of the factors discussed above, including the connection between Mr. Taylor's intellectual disability and the offense conduct, the exceptionally punitive effect of incarceration given his intellectual disability, or the risks that would occur if DDS services were disrupted. The Probation Office did not conduct a home inspection prior to making its recommendation or evaluate Mr. Taylor's current circumstances. The Probation Office also suggests that it can "direct the defendant on a path toward successful reintegration into society" following a term of incarceration, ECF 51 at 2, but that statement fails to consider the

extraordinary efforts that were required to achieve Mr. Taylor's current circumstance. The Probation Office does not have the capacity to provide the services DDS currently has in place. For these reasons, the Court should disregard the Probation Office's recommendation and impose a sentence consistent with the recommendation of the government.

## Conclusion

Based on Mr. Taylor's intellectual disability and the services that his is receiving from DDS, a sentence of times served with a 15-year term of supervised release with the conditions listed above will be sufficient but not greater than necessary to serve the purposes of sentencing.

Respectfully submitted,

A. J. KRAMER
FEDERAL PUBLIC DEFENDER

/s/

MARY MANNING PETRAS
Assistant Federal Public Defender
625 Indiana Avenue, N.W., Suite 550
Washington, D.C. 20004
(202) 208-7500