**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **DONNELL TAYLOR** | : | **CRIMINAL NO. 22-CR-215 (BAH)** |
| | : | |
| **Defendant.** | : | |
| | : | |

## UNITED STATES' SENTENCING MEMORANDUM

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully files this memorandum to aid the Court in its sentencing of the defendant, Donnell Taylor. For the reasons discussed below, the government requests that this Court impose a sentence of time served, followed by 15 years of supervised release under the conditions agreed upon in the plea agreement.

## BACKGROUND

On November 2, 2020, the defendant, a twenty-six-year-old man residing in Washington, D.C., began communicating with MV1, a twelve-year-old boy, over Instagram. MV1 sent the defendant a screenshot of his birthdate, showing that he was born in 2008. MV1 also referred to himself as a 'tweenager.'

The defendant communicated with MV1 over Instagram on a near-daily basis. The conversations generally revolved around video games; however, the defendant sent other messages that were sexual in nature and became increasingly graphic. During these conversations, the defendant sent MV1 a photo of his penis and requested photos of MV1 and MV1's underwear. In mid-December 2020, MV1's parents discovered the conversations and reported them to law enforcement.

On December 21, 2021, law enforcement executed a search of the defendant's electronic devices at his residence in Washington, D.C. During the search, law enforcement discovered Instagram communications with a second boy, MV2. The messages revealed that the defendant began communicating with MV2, who was thirteen years old, in January 2019 after encountering the child through playing an Xbox video game. Early in the communications, MV2 told the defendant that he would turn fourteen years old in March.

During the communications, the defendant sent MV2 images of his penis and instructed MV2 to take and send him sexually explicit photos, including photos of MV2's penis, naked buttocks, and an image of MV2 anally penetrating himself with a finger. MV2 took and sent the photos to the defendant at the defendant's request. The images were later recovered from the defendant's phone. At the time, MV2 was thirteen and fourteen years old. The defendant continued communicating with MV2 about both sexually explicit and non-sexually explicit topics on a near-daily basis until his arrest in December 2021, at which point MV2 was sixteen years old.[1]

The defendant was arrested on December 22, 2021, and charged with Attempted Sexual Exploitation of a Child, in violation of 18 U.S.C. §§ 2251(a), (e); Coercion and Enticement, in violation of 18 U.S.C. § 2422(b); Receipt of Child Pornography, in violation of 18 U.S.C. § 2252(a)(2); Transfer of Obscene Material to a Minor, in violation of 18 U.S.C. § 1470; and Possession of Child Pornography, in violation of 18 U.S.C. § 2252(a)(4). When questioned by law enforcement, the defendant stated that he blocked MV1 upon finding out that MV1 was a minor, and claimed that MV2 was 14 or 15 years old when they began communicating.

[1] The government did not find any evidence that the defendant distributed the sexually explicit photos of MV2, nor any other child sexual abuse material on his devices.

On January 6, 2022, the defendant was released from pretrial detention to home confinement at Abundant Life Residential Services, a facility run by the D.C. Department of Disability Services (DDS) for individuals with developmental disabilities.

On May 9, 2024, the defendant pled guilty to one count of Possession of Child Pornography. The parties agreed to recommend a sentence of time served, followed by fifteen years of supervised release under the following conditions:

- Home incarceration with GPS monitoring at a DDS staff-secure supported living facility, with the exception that the defendant may leave the facility under the supervision of his one-to-one direct support provider to participate in DDS activities, to visit his mother at her residence, to attend medical or therapeutic appointments, or for other purposes approved by the U.S. Probation Office;
- The defendant must comply with DDS's Behavioral Support Program, including one-to-one direct support 24 hours a day/7 days a week;
- The defendant must not come into contact with anyone under the age of 18 years, where contact is defined as verbal, written, or physical interaction;
- The defendant must not possess or have access to any smartphone, computer, smartwatch, or other device with internet capabilities, unless the internet capabilities have been disabled by the DDS caregiver, or have access to any social media applications;
- The defendant must participate in mental health and sexual education treatment, including medication compliance; and
- The defendant must comply with his Individual Support Plan (ISP) and DDS habilitation services and support.
- After one year from the commencement of the term of supervised release, the defendant may move the Court to modify the condition of GPS monitoring. After three years from the commencement of the term of supervised release, the defendant may move the Court to modify the remaining conditions of supervised release.

## DISCUSSION AND RECOMMENDATION

### I. Generally Applicable Legal Principles

In *United States v. Booker*, 125 S. Ct. 738 (2005), the Supreme Court held that the mandatory application of the United States Sentencing Guidelines violates the Sixth Amendment principles articulated in *Blakely v. Washington*, 124 S. Ct. 2531 (2004). As a consequence, the

Court invalidated the statutory provision that made the Guidelines mandatory, 18 U.S.C. § 3553(b)(1). *Booker*, 125 S. Ct. at 756.

In post-*Booker* cases, the Supreme Court has stated that a district court should begin all sentencing proceedings by correctly calculating the applicable guidelines range. *See United States v. Gall*, 552 U.S. 38, 49 (2007) ("As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark."). After giving both parties an opportunity to argue for an appropriate sentence, the district court should then consider all of the applicable factors set forth in 18 U.S.C. § 3553(a). *Id.* These factors include "the nature and circumstances of the offense and the history and characteristics of the defendant" (18 U.S.C. § 3553(a)(1)); the need for the sentence imposed to reflect the seriousness of the offense, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed correctional treatment (18 U.S.C. § 3553(a)(2)); the kinds of sentences available (18 U.S.C. § 3553(a)(3)); the Sentencing Guidelines and related Sentencing Commission policy statements (18 U.S.C. § 3553(a)(4) and (a)(5)); the need to avoid unwarranted sentencing disparities (18 U.S.C. § 3553(a)(6)); and the need to provide restitution to any victims of the offense (18 U.S.C. § 3553(a)(7)).

## II. <u>Sentencing Guidelines Calculation</u>

The government agrees with the sentencing guidelines calculation set forth in the plea agreement and the Presentence Report; namely, that the defendant's total offense level is 33 with an estimated guidelines range of 135—168 months of incarceration and a statutory maximum sentence of 120 months of incarceration.

## III. Government's Sentencing Recommendation

As outlined in the plea agreement, the government recommends a sentence of time served, followed by fifteen years of supervised release under the following conditions:

- Home incarceration with GPS monitoring at a D.C. Department of Disability Service (DDS) staff-secure supported living facility, with the exception that the defendant may leave the facility under the supervision of his one-to-one direct support provider to participate in DDS activities, to visit his mother at her residence, to attend medical or therapeutic appointments, or for other purposes approved by the U.S. Probation Office;
- The defendant must comply with DDS's Behavioral Support Program, including one-to-one direct support 24 hours a day/7 days a week;
- The defendant must not come into contact with anyone under the age of 18 years, where contact is defined as verbal, written, or physical interaction;
- The defendant must not possess or have access to any smartphone, computer, smartwatch, or other device with internet capabilities, unless the internet capabilities have been disabled by the DDS caregiver, or have access to any social media applications;
- The defendant must participate in mental health and sexual education treatment, including medication compliance; and
- The defendant must comply with his Individual Support Plan (ISP) and DDS habilitation services and support.
- After one year from the commencement of the term of supervised release, the defendant may move the Court to modify the condition of GPS monitoring. After three years from the commencement of the term of supervised release, the defendant may move the Court to modify the remaining conditions of supervised release.

This sentence is consistent with the factors set forth in 18 U.S.C. § 3553(a). The lengthy period of supervision reflects the severity of the defendant's conduct, while also recognizing his reduced culpability and the significant mitigating factors present in the defendant's history and characteristics. Moreover, given the unique circumstances of this case, education and treatment for the defendant – rather than incarceration – provide the best protection for the community going forward. Accordingly, the government requests that the Court impose the jointly recommended sentence described above.

A. Nature and Circumstances of the Offense

The defendant's conduct was extremely serious, and the government's proposed sentence is not meant to minimize his actions. The defendant persuaded a thirteen-year-old boy to take sexually explicit photos – and, even more egregious, to perform sexual acts on himself – for the defendant's own sexual gratification. The defendant engaged in sexually explicit and extremely graphic conversations with a second child, who was only twelve years old, and requested that this boy send photos of himself and his underwear. The defendant also sent the child a photo of his penis. The defendant knew that both of these children were minors and he knew that his conduct was wrong, as evidenced by his false statement to law enforcement that he blocked MV1 upon learning that MV1 was a minor. The harm caused by the defendant's actions to these children, at a crucial period in their development, cannot be overstated: it is well-accepted that children who are sexually exploited suffer from lifelong, and often significant, mental health issues.

However, the defendant's communications with these minors do not exhibit the underlying predatory and exploitative *intent* that marks the overwhelming majority of child exploitation cases. The defendant's intellectual disability, discussed further below, is evident throughout his communications. He consistently appears to view, and relate to, the minors as their peer. A substantial percentage of his messages – which, in the case of MV2, span years – are not sexual in nature and discuss video games, anime, and similar topics.

In sum, the defendant's offense is extremely serious and his actions unquestionably harmed two vulnerable children. At the same time, all the evidence available to the government shows that he did not have the malicious, predatory intent that is the hallmark of these crimes. The parties' proposed sentence seeks to address both factors: the extended period of supervised release under

stringent conditions reflects the severity of the defendant's conduct, while the focus on supervision and education, rather than punishment, recognizes his lack of bad intent.

B. History and Characteristics of the Defendant

The defendant has been diagnosed with an intellectual disability and has a Full Scale IQ score of 65. He attended a special education school as a child and has received services through the D.C. Department of Disability Services as an adult. [redacted] The defendant's intellectual disability, [redacted], and lack of sexual education (*see* February 3, 2023 Report by Dr. Boyd at 8) provide important context for the defendant's conduct and distinguish his crime from that of a typical offender. Taken together, these factors diminish his culpability and are consistent with the lack of sophistication and predatory intent seen in the offense conduct. *See, e.g.*, *Atkins v. Virginia*, 536 U.S. 304, 307 (2002) ("[b]ecause of their disabilities in areas of reasoning, judgment, and control of their impulses ... [intellectually disabled persons] do not act with the level of moral culpability that characterizes the most serious adult criminal conduct").

The government also notes that, for the past two-and-a-half years, the defendant has been on pretrial release under essentially the same conditions as those in the parties' recommended sentence. The defendant has not incurred any infractions while on Pretrial Release. Undersigned counsel has spoken with both the defendant's original Pretrial Release Officer (Christine Schuck) and DDS service coordinator (Comfort Foffie), who confirmed that the defendant has not only done well on pretrial release, but has been actively engaged in his treatment programs.

In short, the defendant's history and characteristics reflect a diminished culpability. The unique combination of mitigating factors in this case, as well as the defendant's ongoing success at his DDS facility, support a sentence of supervised release, rather than incarceration.

C. Punishment, Deterrence, Protection, and Correction

A sentencing court "shall impose a sentence sufficient, but not greater than necessary" to comply with the need for a sentence: "(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

The government recognizes that its recommended sentence is unusual in a child exploitation case, particularly given the defendant's conduct. His diminished culpability and lack of malicious intent, however, lessen the need for a punitive sentence. Instead, more weight should be placed on deterrence and protection of the community. Here, the parties' proposed conditions of supervised release ensure the safety of the public and deter further criminal conduct in two ways. First, the defendant will be under constant supervision by DDS for up to fifteen years, without access to any Internet-enabled electronic devices. Similar to incarceration, the defendant will essentially be incapacitated and unable to commit any further offenses. Second, the defendant must continue his mental health treatment and, importantly, his sexual education treatment. This requirement is designed to prevent future offensive conduct by the defendant once he is back in the community. Moreover, the defendant faces incarceration should he violate any provision of his supervised release, which provides significant incentive to comply with the proposed conditions.

Given the unique circumstances of this case, the parties' proposed sentence best accomplishes the varied aims of punishment, deterrence, protection, and education.

D. The Need to Avoid Unwarranted Sentence Disparities among Defendants with Similar Records Who Have Been Found Guilty of Similar Conduct

Section 3553(a)(6) directs courts to consider the need to avoid *unwarranted* disparities among defendants "with similar records who have been found guilty of similar conduct." However, it "does not require the district court to avoid sentencing disparities between defendants who might not be similarly situated." *United States v. Mattea*, 895 F.3d 762, 768 (D.C. Cir. 2018) (quoting *United States v. Guillermo Balleza*, 613 F.3d 432, 435 (5th Cir. 2010)).

Here, the U.S. Sentencing Commission's Judicial Sentencing Information shows that the average sentence length for individuals sentenced under U.S.S.G. § 2G2.1, with a final offense level of 33 and Criminal History Category I, was 121 months during Fiscal Years 2018—2022. The median sentence length was 120 months. The government's recommendation is markedly different from these sentences; however, in this case, the resultant sentencing disparity is *warranted* due to the substantial mitigating factors that distinguish the defendant's offense from the norm. Indeed, District Courts have imposed significant downward variances in child pornography cases due to a defendant's intellectual disability. *See, e.g.*, *United States. v. Meillier*, 650 F.Supp. 2d 887 (D.Minn. 2009) (below-guidelines sentence of one day in prison and 30 years of supervised release was appropriate due to defendant's intellectual disability and childhood abuse); *United States v. Larson*, 558 F.Supp. 2d 1103 (D.Mont. 2008) (vacated in part on other grounds) (child pornography mandatory minimum sentences as applied to defendant whose mental impairments diminished his personal culpability violated the Eighth Amendment); *United States v. Rothwell*, 847 F.Supp.2d 1048, 1063 (E.D. Tenn. 2012) ("in imposing a non-Guidelines sentence in this [child pornography] case, the Court does so in part based on Rothwell's limited intellectual

functioning"). Accordingly, the government's recommended sentence does not create an unwarranted sentencing disparity.

E. Restitution

The government has reached out to the parents of MV1 and to MV2 (who is now eighteen years old). At this time, the government has not received any restitution requests or victim impact statements. Should the government receive any materials, the government will submit those documents to the Court and defense counsel under seal.

## CONCLUSION

For the reasons set forth above, the Government respectfully requests that the Court sentence the defendant to a period of time served, followed by fifteen years of supervised release with the conditions described above.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY

By:

*/s/ Caroline Burrell*
Caroline Burrell
Assistant United States Attorney
Federal Major Crimes
601 D Street, NW
Washington, D.C. 20530
(202) 252-6950
Caroline.Burrell@usdoj.gov